UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LINDA BUCZAKOWSKI,

                                Plaintiff,

    -against-                                      5:18-CV-0812 (LEK/ML)

1199SEIU,

                                Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On June 5, 2017, plaintiff Linda Buczakowski resigned her position as a patient account representative at Crouse Health Hospital, Inc., ("Crouse Hospital") in Syracuse, New York, allegedly because of discriminatory and retaliatory treatment by her managers stemming from her age and a medical disability. She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against her union, 1199SEIU Healthcare Workers East ("Defendant," "SEIU," or "Union"). After receiving a right to sue letter on April 12, 2018, Plaintiff filed the present case against SEIU pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Dkt. No. 1 ("Complaint"). Plaintiff claims under Title VII, the ADEA, and the ADA that the Union retaliated against her. Compl. at 2, 8, 14.[1] The Court also construes the pro se complaint to assert a "hybrid" claim for breach of the collective bargaining agreement and the duty of fair

---

[1] Citations to all papers refer to the pagination generated by CM/ECF, the Court's electronic filing system.

representation ("DFR") pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 ("hybrid § 301 / DFR claim").

SEIU moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for failure to join a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7). Dkt. Nos. 7 ("Motion to Dismiss"), 7-1 ("Defendant's Memorandum") at 1. Plaintiff has filed a response, Dkt. No. 23 ("Plaintiff's Response"), to which the Union replied, Dkt. No. 26 ("Defendant's Reply"). Plaintiff has also filed a sur-reply. Dkt. No. 30 ("Plaintiff's Sur-Reply"). For the following reasons, the Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

Because the Plaintiff is proceeding pro se in this action,[2] the Court will construe her complaint liberally. Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990). For the purposes of the Motion to Dismiss, the Court will consider the (1) facts as alleged by Plaintiff in the three form complaints—one for Title VII, one for the ADEA, and one for the ADA—that she has filed; (2) the seven-paragraph statement of facts attached to her ADA form complaint; and (3) facts alleged in her responses to Defendant's Motion to Dismiss. "[I]n the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint–to the extent those papers are

---

[2] Plaintiff has brought a separate suit before this Court against Crouse Hospital and four of its employees. In the related action against her employer, Buczakowski v. Crouse Health Hospital Inc., No. 18-CV-330 (N.D.N.Y. filed Mar. 16, 2018), Plaintiff initially proceeded pro se but retained counsel after the Motion to Dismiss was filed in this case. No. 18-CV-330, Dkt. No. 25. However, she has not retained counsel in the action against the Union, so the Court will continue to hold her to the standard due a pro se litigant.

consistent with the allegations in the complaint." Morgan v. Luft, No. 15-CV-24, 2016 WL 1118452, at *3 (N.D.N.Y. Mar. 22, 2016) (citing, inter alia, Drake v. Delta Air Lines, Inc., 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam)). As discussed below, the Court will also take judicial notice of the Charge of Discrimination Plaintiff filed with the EEOC. Dkt. No. 7-3 ("EEOC Charge").

In May 2017, when the adverse actions in question took place, Plaintiff was sixty-two years old. Compl. at 9. She had also suffered from multiple myeloma, which resulted in "several fractured vertebrae." Id. at 13. This condition occasionally required her to take time off for medical appointments. Id. at 19.

Plaintiff was both hired by Crouse Hospital's "Business Office" and became a member of SEIU on October 8, 2012. Id. at 15. A year later, Plaintiff received the title "Patient Account Representative Float." There were three other "floats" in the business office. Id. Of the four, Plaintiff was the "second senior employee." Id. at 16. On May 3, 2017, Plaintiff's supervisor, Cathy Greenia, "threatened to discipline [Plaintiff] for not obtaining [her] yearly physical . . . ." Pl.'s Resp. at 3. On May 4, 2017, Plaintiff attended a meeting with the other floats, Crouse Hospital management, and two SEIU representatives, Veronica Clanton and Adrienne Valenti. Compl. at 16. Both the management and the Union representatives informed the floats that Crouse Hospital was eliminating the float "title," but none of their "positions" were eliminated. Id. The other three floats were given new positions at the meeting, while Plaintiff was told "her position had not yet been determined." Id. Management also told Plaintiff that as part of the reorganization "authorization and verification employees[] would be brought back into the business office." Dkt. No. 23-3 ("Plaintiff's Response, Exhibit 3") at 2. Plaintiff inquired

3

whether any of the "floats could bid into the authorization and verification department," but Valenti responded "that there would be no openings in authorization and verification." Id.

After the meeting, Clanton introduced Plaintiff to John Bergemann, the human resources director for Crouse Hospital. Bergemann told Plaintiff "to 'leave' Crouse Hospital due to [her] medical condition and the fact that [she] had no immune system," and Clanton "made it quite clear she agreed with [Bergemann's] statement." Compl. at 16. Bergemann also urged Plaintiff "to retire and apply for Medicare." Id. at 9. Plaintiff responded that she had been cleared to work and did not wish to leave her position. Id. at 16. Bergemann and Clanton both reiterated that her position was not being eliminated. Id. After Plaintiff met with Bergemann, she asked Clanton why Clanton had introduced Bergemann to Plaintiff since Plaintiff "thought HR only got involved when there was a termination." Pl.'s Resp., Ex. 3 at 3. Clanton responded that "if it was a question of termination [Plaintiff] would have been brought up to HR and that Bergemann was just being friendly." Id.

The next day, Plaintiff attended a union meeting where she protested not being given a new position despite being the "second senior employee." Compl. at 16. The collective bargaining agreement mandated that more senior employees are given "bumping rights" when their job classification is eliminated. Id. Between May 4 and 9, Plaintiff requested the Union take action to investigate why all of the floats except Plaintiff had been given new job titles, but SEIU representatives "refused to provide [Plaintiff] with the ability to even file a grievance" since her position was not being eliminated. See id.; Pl.'s Resp. at 4. Clanton told Plaintiff that she should "bid on a job, even though none of the other business office floats had had to bid on jobs." Pl.'s Resp., Ex. 3 at 5. On May 10, Clanton provided Plaintiff with a "bumping list," which the Court

presumes to have included alternative positions at Crouse Hospital. Compl. at 17. When Plaintiff asked if the less senior floats had also received a bumping list, Clanton informed her she was the only employee who had been given one. Id. Plaintiff refused the bumping list, saying "she did not want to bump unless all four floats were treated the same way." Pl.'s Resp., Ex. 3 at 6.

On May 11, 2017,[3] Plaintiff called for a meeting with Bergemann, who informed her that Crouse Hospital had decided to eliminate her position prior to the May 4th meeting. Compl. at 17. Bergemann also informed Plaintiff that "the hospital and the union had meant [sic] in several meetings and agreed to eliminate [Plaintiff's] position," Pl.'s Resp. at 4, and "only [her] position," Pl.'s Sur-Reply at 2. While Crouse Hospital did not fire Plaintiff despite eliminating her position, the hospital "intended to force [Plaintiff] out of [her]" new job[4] by refusing to give her permission to take medical leave and penalizing Plaintiff for taking time off. Compl. at 18. Therefore she was "forced to resign so that [she] could continue necessary medical treatment." Id. She has accused SEIU of "collud[ing] with management to eliminate [her] position due to [her] medical condition." Id.

Plaintiff claims that she was subject to "retaliation," including "being charged with a Class C Offense," id. at 17, and being "suspended," Pl.'s Resp., Ex. 3 at 7–8. Plaintiff also received "constant threats on losing [her] position" from Tracy Tortorello, a Crouse Hospital employee, even though Plaintiff "survive[d] going thru [sic] daily high dose chemo pills, weekly

---

[3] The Complaint states this meeting occurred May 11, 2018, but considering Plaintiff resigned her position on June 5, 2017, Compl. at 17, the Court construes this allegation to refer to May 11, 2017.

[4] Plaintiff does not clarify what her new position entailed.

5

chemo injections, pneumonia, [and] monthly infusions." Pl.'s Resp. at 4; Dkt. No. 23-8 ("Plaintiff's Response, Exhibit 8") at 9.

Plaintiff filed a complaint against SEIU with the NLRB ("National Labor Relations Board") on May 12, 2017. Pl.'s Resp. at 4. Plaintiff then filed a complaint against the Union with the EEOC and received a right to sue letter on April 12, 2018. Compl. at 5. She then filed the present case on July 10, 2018. Id. As explained below, Plaintiff seems to have used the Title VII form to assert a hybrid § 301 / DFR claim rather than a claim for "discrimination based on race, color, religion, sex or national origin." Compl. at 2. Plaintiff asked for "Reinstatement of position in Business Office[,] Lost wages, Compensation for emotional distress, Cost incurred from increased medical / dental due to loss of benefits, Attorney fee [sic], [and] Court fees." Id.. at 6, 19.[5]

## III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). In addition to accepting all factual allegations as true, a court must draw all reasonable inferences in a plaintiff's favor. Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018). However the complaint must provide enough "factual content" to "allow[] the court to draw the reasonable inference that the defendant is liable for the

---

[5] Plaintiff includes factual allegations in her case against Crouse Hospital that are different and more detailed than those in her Complaint against SEIU. No. 18-CV-330, Dkt. Nos. 1, 7, 49. The Court will not consider these additional factual allegations in determining whether the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). Fed. R. Civ. P. 12(d); see also Goel v. Bunge, Ltd, 820 F.3d 554, 560 (holding that filings from a related case could not be considered on a Rule 12(b)(6) motion when they were not integral to the complaint).

misconduct alleged." Iqbal, 556 U.S. at 678. Therefore a complaint cannot survive merely by alleging "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When there are "two plausible inferences that may be drawn from factual allegations" in the complaint, "[a] court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, L.L.C. v. Am. Media Inc., 680 F.3d 162, 185 (2d Cir. 2012); see also Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable.")

Pleadings by pro se plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." Peay v. Ajello, 470 F.3d 65, 67 (2d Cir. 2006) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, pro se plaintiffs are still required to meet the plausibility standard. Rosendale v. Brusie, 374 F. App'x 195, 196 (2d Cir. 2010).

## IV. DISCUSSION

### A. Plaintiff's Title VII Claim

Title VII makes it illegal for a labor organization to "discriminate against[] any individual because of his race, color, religion, sex, or national origin" or to "cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e-2(c). Plaintiff filed a form complaint entitled, "Civil Complaint Pursuant to Title VII of the Civil Rights Act, as Amended," and she has checked a box indicating she is alleging "employment discrimination based on race, color, religion, sex or national origin." Compl. at 1–2.

7

However, in clarifying which protected category applies to her, Plaintiff checked a box saying, "Other," and added Defendant had discriminated against her in "violation of the union fair representation." Id. at 2. In other parts of the Title VII complaint, Plaintiff alleges "failure to follow provisions of the union contract," that "1199 SEIU union representatives failed to represent me pursuant to the collective bargaining agreement," "violations of the collective bargaining agreement," and that "Union representatives choose not to file grievance when requested." Id. at 2–3.

The Court believes that Plaintiff intended to use this form to file a hybrid § 301 / DFR claim. To the extent Plaintiff is asserting a Title VII claim, the Court dismisses it because the Complaint contains no allegations that either SEIU discriminated against her based on race, color, religion, sex or national origin. Because the Court is dismissing this claim on other grounds, it will not consider Defendant's argument that Plaintiff failed to exhaust her administrative remedies on her Title VII claim. Def.'s Mem. at 10–11.

### B. Plaintiff's Hybrid § 301 / DFR Claim

Under federal labor law, a union is the "exclusive bargaining representative of the employees." Vaca v. Sipes, 386 U.S. 171, 177 (1967). Thus, a union has a "statutory duty fairly to represent all of those employees, both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." Id. Because a union's status as exclusive representative deprives union members of other "means of protecting their own interest[s]," the Supreme Court has found unions have a legal duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151,

8

164 n.14 (quoting Vaca, 386 U.S. at 177). Accordingly, "a union breaches the DFR when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998) (quoting Vaca, 386 U.S. at 190).

Section 301 of the Labor Management Relations Act provides a remedy for "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(c). A hybrid § 301 / DFR action stems from a breach of the collective bargaining agreement by the employer, which the union responds to in a manner that violates the DFR. White v. White Rose Food, 237 F.3d 174, 178–79 (2d Cir. 2001) (citing Del Costello 462 U.S. at 164–65). Because Plaintiff has asserted "1199 SEIU union representatives failed to represent me pursuant to the collective bargaining agreement," Compl. at 3, the Court construes Plaintiff's Complaint to raise a hybrid § 301 / DFR claim against Defendant.

The limitations period for filing a hybrid § 301 / DFR claim is six months. Del Costello, 462 U.S. at 169. The limitations period starts running when "the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred." Kavowras v. N.Y. Times Co., 328 F.3d 50, 55 (2d Cir. 2003) (internal quotations and alterations omitted).

Plaintiff brought the present action on July 10, 2018. Compl. According to the Complaint, some time before May 10, 2017, Plaintiff "asked for union assistance and the union representative refused." Id. at 16–17. On May 10, 2017, Plaintiff's union representative provided her with a "bumping list" and informed her that less senior employees were not required to "bump," allegedly in violation of the "union contract." Id. at 17. The next day, Crouse Hospital informed Plaintiff that her position had been eliminated prior to the meeting on May 4, 2017,

meaning it was already apparent that "union representatives misrepresented the facts." Id. On June 5, 2017, Plaintiff "realized that the negative actions of the union . . . were not going to stop and was forced to resign." Id. at 18.

Plaintiff has also provided the Court with a copy of her EEOC Charge, which she signed on July 5, 2017. EEOC Charge at 5. It is appropriate to consider the EEOC Charge on a motion to dismiss because it is a public record and Plaintiff relied on it in her Complaint by attaching her right-to-sue letter. Compl. at 5; Kavowras, 328 F.3d at 57 (upholding a lower court's consideration of an NLRB charge at the motion-to-dismiss stage); Amaya v. Ballyshear, 295 F. Supp. 3d 204, 217 (E.D.N.Y. 2018) (considering an EEOC charge on a motion to dismiss). In it, Plaintiff alleges "the Union failed to represent me in reference to the elimination of the float position description." EEOC Charge at 5. The Court notes the allegations in the Complaint alone are sufficient to conclude that Plaintiff's claim accrued more than six months before her claim was filed. However, the EEOC Charge demonstrates that Plaintiff had "actual knowledge of the breach" at the time it was filed. See Kavowras, 328 F.3d at 55; Amaya, 295 F. Supp. 3d at 217. Because Plaintiff's claim accrued by July 5, 2017 at the latest—one year before she filed the Complaint—her hybrid § 301 / DFR claim is dismissed as time barred.

**C. Plaintiff's Discrimination Claims Under the ADEA and ADA**

The ADEA prohibits labor organizations from discriminating "against any individual because of "age," or causing or attempting to cause employers to do the same. 29 U.S.C. § 623(c). Similarly, the ADA makes it illegal for unions to "discriminate against a qualified individual on the basis of disability." See 42 U.S.C. §§ 12111(2), 12112(a). A claim brought against a labor organization under the ADEA or ADA requires the Plaintiff to demonstrate: (1)

10

that the union breached its DFR; and (2) that the breach was motivated by discriminatory intent with respect to age or disability. McIntyre v. Longwood Cent. Sch. Dist., 380 F. App'x 44, 49 (2d Cir. 2010); Klaper v. Cypress Hills Cemetery, No. 10-CV-1811, 2012 WL 959403, at *12 (E.D.N.Y. Mar. 21, 2012).

### 1. *A Breach of the DFR*

To establish a breach of the DFR, Plaintiff must demonstrate that SEIU's behavior was "arbitrary, discriminatory, or in bad faith." Marquez, 525 U.S. at 44 (quoting Vaca, 386 U.S. at 190). A union's action is arbitrary "if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." White, 237 F.3d at 179 (quoting Marquez, 525 U.S. at 45) (internal quotation marks omitted). For action to be discriminatory, it must be "intentional, severe, and unrelated to legitimate union objectives." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (quoting Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge, 403 U.S. 274, 301 (1974)). A union acts with "bad faith" when it engages in "fraud, dishonesty, and other intentionally misleading conduct" and has an "improper intent, purpose, or motive." Vaughn, 604 F.3d at 709–10 (quoting Spellacy v. Air Line Pilots Ass'n, Int'l, 156 F.3d 120, 126 (2d Cir. 1998)).

A union's liability can be predicated on its "role in ratifying an employer's discriminatory practice" or in "tacit acquiescence in an employer's discriminatory practices." Nweke v. Prudential Ins. Co. of Am., 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998) (quoting United States v. City of Buffalo, 457 F. Supp. 612, 639 (W.D.N.Y. 1978)). However, this ratification

11

acquiescence must rise to the level of a breach of the DFR, or, in other words, it must itself be "arbitrary, discriminatory, or in bad faith." Klaper, 2012 WL 959403 at *7.

Plaintiff alleges that "the union colluded with management to eliminate [Plaintiff's] position due to [her] medical condition," and that Crouse Hospital "management and union representatives misrepresented the facts [about the elimination of her position]." Compl. at 17–18. Another court in this circuit has observed:

> When an employee claims that his union breached its duty of fair representation by failing to grieve his complaints, courts typically look to determine whether the union's conduct was arbitrary. Clarke v. Commc'ns Workers of America, 318 F. Supp. 2d 48, 56 (E.D.N.Y. 2004) (collecting cases). A union acts arbitrarily when it 'ignores or perfunctorily presses a meritorious claim,' Samuels v. Air Transport Local 504, 992 F.2d 12, 16 (2d Cir. 1993), but not where it 'fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance,' Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir. 1994). Before deciding that a grievance lacks merit, however, the union must conduct at least a minimal investigation . . . [b]ut under this standard, only an egregious disregard for union members' rights constitutes a breach of the union's duty to investigate. Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 420 (1st Cir. 2005) (quoting Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995) (internal quotation marks omitted); Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir. 1985)).
>
> Accordingly, to prevail on his claim, plaintiff must demonstrate that (1) his grievances had merit, (2) that [the union] was aware of the grievances, and (3) that [the union's] conduct in failing to process the grievances was arbitrary. See Clarke, 318 F. Supp. 2d at 58–59 (citing Young v. United States Postal Serv., 907 F.2d 305, 308 (2d Cir. 1990)).

Moore v. Roadway Express, Inc. & Local 707, No. 07-CV-977, 2008 WL 819049, at *5 (E.D.N.Y. Mar. 25, 2008). In Moore, the court found that Plaintiff stated a valid claim for breach

12

of DFR because the union "failed to conduct even a minimal investigation" into his complaints that his employer "forced him to use unsafe equipment, wrongly denied him overtime hours and compensation, and harassed him in retaliation for his complaints." Id.

Here, SEIU refused to conduct even a "minimal investigation" into Plaintiff's complaints even though the Union still provided Plaintiff with a "bumping" list, which the Union likely would not have done unless Crouse Hospital had eliminated Plaintiff's position. Compl at 17. Furthermore, Bergemann admitted that the hospital and union had met "in several meetings and agreed to eliminate [Plaintiff's] position," Pl.'s Resp. at 4, and "only [her] position," Pl.'s Sur-Reply at 2. Thus, taking Plaintiff's allegations as true, the Union appears to have acquiesced in Crouse Hospital's decision to eliminate Plaintiff's position. And by covering up this acquiescence through maintaining to Plaintiff that Crouse Hospital was not eliminating her position, SEIU "misrepresented the facts" surrounding the elimination of Plaintiff's position. Compl. at 17. "Courts have found a breach of the federal duty of fair representation when a union leader has purposefully concealed or misrepresented matters in his dealings with members." Cunningham v. Local 30, Int'l Union of Operating Engineers, 234 F. Supp. 2d 383, 399 (S.D.N.Y. 2002) (citing Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1142 (2d Cir. 1994)); see also Alicea v. Suffield Poultry, Inc., 902 F.2d 125, 130 (1st Cir. 1990) ("Holding a union responsible for serious misrepresentations that lack rational justification or are improperly motivated is consistent with the union's obligation to deal honestly and fairly with its members.") Plaintiff has therefore demonstrated her grievances had merit, that the Union was aware of her complaints, and that SEIU's failure to process Plaintiff's complaints was "so far outside a wide range of reasonableness, as to be irrational," and, consequently, arbitrary. See Moore, 2008 WL

13

819049, at *5 (citing Clarke, 318 F. Supp. 2d at 58–59); see also White, 237 F.3d at 179 (quoting Marquez, 525 U.S. at 45) (internal quotation marks omitted). "At this preliminary stage . . . the [C]ourt cannot hold that [P]laintiff's claim[]" that SEIU breached its DFR is "implausible." See Moore, 2008 WL 819049, at *5.

2. *Discriminatory Intent*

Given Plaintiff has sufficiently alleged that the Union breached its DFR owed to Plaintiff, the Court will consider whether SEIU's breach was motivated by "discriminatory animus" toward Plaintiff's age or disability. McIntyre, 380 F. App'x at 49. "[T]o demonstrate Defendants' discriminatory animus, [a plaintiff] 'must ultimately show that the union's actions were motivated by discriminatory or retaliatory intent.'" Braxton v. TWU Local 100, No. 16-CV-9425, 2017 WL 6542500, at *3 (S.D.N.Y. Dec. 21, 2017) (quoting Durant v. Union Local 237, No. 12-CV-1166, 2013 WL 1232555, at *6 (E.D.N.Y. Mar. 4, 2013), report and recommendation adopted by No. 12-CV-1166, 2013 WL 1247520 (E.D.N.Y. Mar. 26, 2013). At the pleading stage, "the plaintiff does not need substantial evidence of discriminatory intent," and need only "sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015); see also Burke v. N.Y.C. Transit Auth., 758 F. App'x 192, 194 (2d Cir. 2019) (noting that to state an ADA employment discrimination claim, "a plaintiff must allege an adverse employment action that occurred under circumstances giving rise to an inference of discrimination").

Here, Plaintiff has failed to sufficiently allege that Defendant intended to discriminate against Plaintiff because of her age. Plaintiff alleges that she is over the age of 40[6] and that, on the day Plaintiff learned Crouse Hospital was eliminating the float titles, Bergemann urged her "to retire and apply for Medicare." Compl. at 9. But these facts alone do not indicate the Union acted with discriminatory animus towards Plaintiff's age. First, Plaintiff has not alleged facts indicating the Union was aware of Bergemann's statement or agreed with it. Nor has Plaintiff alleged any statements made by SEIU officials regarding Plaintiff's age. Finally, Plaintiff has not alleged any facts that the other floats maintained their positions, at least in part, because of their age. Thus, the Court must dismiss Plaintiff's ADEA claim.

Plaintiff has, in contrast, sufficiently alleged that SEIU intended to discriminate against her because of a disability. Plaintiff alleges that she suffered from multiple myeloma, a condition that required her to take time off for medical appointments during which she received "weekly chemo injections, pneumonia, [and] monthly infusions." Id. at 13, 19; Pl.'s Resp. at 4. Plaintiff's allegation that Clanton—a Union representative—agreed with Bergemann's statement that Plaintiff should "'leave' Crouse Hospital due to [her] medical condition and the fact that [she] had no immune system" supports Plaintiff's assertion that the Union "colluded with [Crouse Hospital's] management to eliminate [Plaintiff's] position due to [her] medical condition." Compl. at 16, 18. Plaintiff further alleges that she was "forced to resign so that [she] could continue necessary medical treatment." Id. at 18. Hence, Plaintiff has alleged facts plausibly

---

[6] "The discrimination prohibited by the ADEA is discrimination 'because of [an] individual's age,' 29 U.S.C. § 623(a)(1), though the prohibition is 'limited to individuals who are at least 40 years of age,' § 631(a)." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996).

15

suggesting the Union intended to discriminate against Plaintiff based on her disability. See Littlejohn, 795 F.3d at 311; Burke, 758 F. App'x at 194.

**D. Retaliation Claims**

SEIU has moved to dismiss Plaintiff's retaliation claims made pursuant to Title VII, the ADEA, and the ADA. Def's. Mem. at 14, 16, 21. A claim for retaliation under each of the three statutes requires: (1) that the defendant knew the plaintiff engaged in a protected activity; (2) an adverse action by defendant against the plaintiff; and (3) a causal link between the adverse action and protected activity. Yerdon v. Henry, 91 F.3d 370, 377 (2d Cir. 1996) (Title VII); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205–06 (2d Cir. 2006) (ADEA); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (ADA). While Plaintiff filed claims against the Union with the NLRB and EEOC, which are protected actions, she has not alleged SEIU took adverse action against her in response to those claims. See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991) (finding adverse action in a union's refusal to proceed with a member's grievance because the member had filed a complaint against that union with the New York State Division of Human Rights). And to the extent Plaintiff claims that she was "charged with a Class C Offense," Compl. at 17, "suspended," Pl.'s Resp., Ex. 3 at 7–8, and received "constant threats on losing [her] position," Pl.'s Resp. at 4, such actions were not plausibly taken by Union officials or were not plausibly taken to stop Plaintiff from complaining to SEIU. In sum, Plaintiff has failed to plead facts demonstrating that the Union retaliated against her.

**E. SEIU's Rule 12(b)(7) Defense**

A movant under Rule 12(b)(7) must demonstrate that: (1) a non-party "should be joined as a necessary party;" (2) joinder of the necessary party is "not feasible;" and (3) if joinder is not

16

feasible, then "whether, in equity and good conscience, the party is one without whom the action between the remaining parties cannot proceed—or, in the traditional terminology, whether the absent party is indispensable." Am. Trucking Ass'n v. N.Y.S. Thruway Auth., 795 F.3d 351, 356–57 (2d Cir. 2015) (internal citations and quotation marks omitted). "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." Id. (quoting 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1609 (3d ed.)).

SEIU has failed to satisfy the requirements for dismissal under Rule 12(b)(7). The Union argues that Crouse Hospital is a necessary party under Rule 19 because "Plaintiff's prayers for relief in each of the form complaints include reinstatement and lost wages, relief which cannot be provided without the Employer's involvement." Def.'s Mem. at 23. The only claim that remains in this case is Plaintiff's ADA claim. The Court construes Plaintiff's request for reinstatement that the Court order the Union investigate her grievance against Crouse Hospital or otherwise make a good faith attempt to negotiate with Crouse Hospital for her reinstatement. Consequently, Plaintiff's request for reinstatement under the ADA does not implicate Crouse Hospital's involvement in this suit. And, given "the governing principle [] is to apportion liability between the employer and the union according to the damage caused by the fault of each," see Vaca, 386 U.S. at 197, then the Court need not join Crouse Hospital to "accord [Plaintiff] complete relief" for her ADA claim of lost wages, see Fed. R. Civ. P. 19(a)(1)(A).

Moreover, Crouse Hospital "has not made a motion to intervene or otherwise claimed to have an interest in this litigation." See Trustees of 1199 Nat'l Ben. Fund for Health & Human

17

Serv. Employees v. United Presbyterian Home at Syosset, Inc., No. 01-CV-10910, 2002 WL 1492133, at *5 (S.D.N.Y. July 11, 2002). Hence, Crouse Hospital is not a necessary party under Rule 19(a)(1)(B) as well. See Fed. R. Civ. P. 19(a)(1)(B) (stating a party is necessary if it "claims an interest relating to the subject of the action . . .").

The Union cites to several cases in support of its argument that Crouse Hospital is a necessary party to Plaintiff's hybrid § 301 / DFR claim, but the Court has dismissed this claim, rendering SEIU's argument moot. Part IV.B. supra. And the Union's reliance upon these cases is misplaced. Del Costello, upon which SEIU relies, explicitly states, "The employee *may*, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." 462 U.S. at 165 (emphasis added). SEIU also relies upon Vaca in which that court merely noted that "the employer *may* be (and probably should be) joined as a defendant in the fair representation suit." 386 U.S. at 197 (emphasis added). And while the Union quotes a portion of Phillips v. Lenox Hill Hosp. in its Memorandum, that case required claims against a hospital and union be tried in one suit pursuant to Rule 42(b), which contains a different standard for joining parties than that contained in Rule 19. No. 86-CV-1026, 1986 WL 12512 at *1 (S.D.N.Y. Oct. 24, 1986).[7] Consequently, these three cases at most stand for the proposition that SEIU and Crouse Hospital should be joined in the same action, not that they must be.

In sum, the Union is not entitled to have the Complaint dismissed under Rule 12(b)(7).

---

[7] It is curious that the Union cites a case requiring claims against a hospital and a union to be tried in one action given SEIU's opposition to consolidating the instant action with Plaintiff's separate case against Crouse Hospital. Dkt. No. 12 ("Defendant's Opposition to Consolidation").

### IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that SEIU's Motion to Dismiss (Dkt. No. 7) is **GRANTED in part**. Plaintiff's Title VII and ADEA claims are **dismissed without prejudice**. Plaintiff's Hybrid § 301 / DFR claim is **dismissed with prejudice** as time barred; and it is further

**ORDERED**, that Plaintiff may move to replead her Title VII and ADEA claims within **sixty days** of the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Union's Motion to Dismiss is otherwise **DENIED**. Plaintiff's ADA claim may proceed; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: November 04, 2019
Albany, New York

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge